## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**PHILIP GIBSON (#456583)**                                      **CIVIL ACTION**

**VERSUS**

                                                                                **NO. 16-354-SDD-RLB**

**JAMES LEBLANC, ET AL.**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 22, 2017.

_____
   **RICHARD L. BOURGEOIS, JR.**
   **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PHILIP GIBSON (#456583)                              CIVIL ACTION

VERSUS

                                             NO. 16-354-SDD-RLB

JAMES LEBLANC, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion to Dismiss (R. Docs. 25 and 41).  These motions are opposed.  *See* R. Docs. 36 and 46.

The *pro se* plaintiff, an inmate incarcerated at Elayn Hunt Correctional Center ("EHCC"), St. Gabriel, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983, the Americans With Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*. (RICO) against numerous defendants, complaining that his constitutional rights were violated when the defendants failed to follow the prison's policy with respect to hearing impaired inmates, resulting in excessive force being used against the plaintiff, and causing injury to the plaintiff to which the defendants were deliberately indifferent.[1] The plaintiff seeks punitive and compensatory damages, as well as declaratory and injunctive relief.

Defendants James LeBlanc, Seth Smith, Robert Tanner, Tim Hooper, Greg McKey, Todd Barrere, Marvin Hartley, Jason Linzy, Shela Robinson, Dr. Raham Singh, Dr. Preety Singh, and

---

[1] A review of the record reveals that defendant Tim Delaney has not been served because the plaintiff did not request service for defendant Delaney.  *See* R. Doc. 21.  Pursuant to the requirements of Rule 4(m) of the Federal Rules of Civil Procedure, failure to serve a defendant within 90 days of commencement of an action is cause for dismissal of that defendant from the proceeding.  Although a *pro se* plaintiff may rely on service by the U.S. Marshal, he may not remain silent and do nothing to effectuate such service, and should attempt to remedy any defects of which he has knowledge.  It is appropriate, therefore, that the plaintiff's claims asserted against Tim Delaney be dismissed, without prejudice, for failure of the plaintiff to effect timely service upon him.

Lindel Slater first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's § 1983 claims against them in their official capacities.  In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).  In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.  *Id*. at 25.  Accordingly, the plaintiff's § 1983 claims asserted against the defendants in their official capacities for monetary damages are subject to dismissal.

In contrast, the plaintiff's § 1983 claims for monetary damages asserted against the defendants in their individual capacities remain viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state.  *Id*. at 29.  The plaintiff's ADA and RA claims against the defendants in their official capacity also remain viable.  However, with regards to the plaintiff's RA claims asserted against the defendants in their individual capacities, the Fifth Circuit has declined to allow plaintiffs the use of section 1983 as a vehicle to reach defendants individually, as persons, who under color of law, may have allegedly subjected a plaintiff to a deprivation of rights under the Rehabilitation Act.  *Lollar v. Baker,* 196 F.3d 603, 609 (5th Cir. 1999).  As such, the plaintiff's RA Claims asserted against the defendants in their individual capacities are subject to dismissal.

Turning to the plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, the defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265,

286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement."
*Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint as amended, the plaintiff alleges the following.  Upon arrival at EHCC
on November 10, 2014, the staff properly noted that the plaintiff is deaf in his left ear, partially
deaf in his right ear, and requires the assistance of a hearing aid.  On December 1, 2014, at
approximately 7:00 a.m., the plaintiff was transported to the infirmary where he remained for
over two hours.  Around 3:00 p.m., CO George arrived for the evening pill call.  The plaintiff
attempted to explain to CO George why he was not present for the morning pill call, but CO
George stated that the plaintiff was present but didn't get up.  Several nearby inmates attempted
to verify the plaintiff's whereabouts.  CO Murray then arrived and the plaintiff and the nearby
inmates again attempted to explain why the plaintiff had missed the morning pill call.

CO Murray informed the plaintiff that he would not receive his medication, and the
plaintiff requested a grievance form which was denied.  The plaintiff then requested to speak
with a ranking officer, and CO Murry ordered the plaintiff to "stop throwing his hands up in his
face," even though the plaintiff was standing approximately six feet away from CO Murry.  Co
Murry then ordered that the tier be locked down and ordered CO Jones to, "call Slater and Lt.
Slater only."

Lt. Slater arrive a few minutes later and CO Murry informed him that the plaintiff was
"being disruptive and throwing his hands up."  Lt. Slater attempted to question the plaintiff, but
CO Murry kept interrupting him and began to speak over the plaintiff.  Due to his hearing
impairment, the plaintiff was no longer able to under the multiple orders and statements being
issued by the correctional officers.  As he was unable to comprehend what orders were being
issued, he turned around and placed his hands behind his back in order to be restrained.  The

plaintiff then asked Lt. Slater who he should respond to and Lt. Slater charged the plaintiff from behind.  As a result, the plaintiff suffered a knee fracture.

The plaintiff was then taken outside the building and laid on the walkway.  Captain Hartley arrived and removed the plaintiff's hearing aid from his right ear rendering the plaintiff unable to understand or communicate with the EMT.  He attempted to inform the various correctional officers, including Asst. Warden Barrere, that he could not hear without the assistance of his hearing aid.  Captain Linzy then began yelling foul language close to the plaintiff's face.  Several unspecified officers then began brandishing knives and removing hair from their forearms, which the plaintiff interpreted to be a threat.

The plaintiff was then transported to the infirmary where he was diagnosed with a Schatzker II tibial plateau fracture to his right knee.  An ace bandage was applied and the plaintiff was transported to lock-down.

On December 2, 2014 the plaintiff was examined by Dr. Roundtree, who recommended surgical repair as soon as possible.  The plaintiff was administered pain medication, and a knee immobilizer was applied.  He was then transported to the Skilled Nursing Unit.

On December 4, 2014, with only two minutes notice, the plaintiff was informed of his disciplinary hearing.  The plaintiff notified his inmate counsel that he would need to present multiple witnesses and documents at the hearing.  The plaintiff's requests to present witnesses and documents were denied by Major Robinson.  The plaintiff then informed Major Robinson of his hearing impairment, and Major Robinson deferred ruling until she was able to verify the same.

On December 14, 2014 the plaintiff was examined by Dr. Wagganspack, an orthopedic specialist.  Dr. Wagganspack attempted to have the plaintiff transported for immediate surgery, but transport was obstructed or canceled by the Medical Director.

On December 16, 2014, the plaintiff returned to disciplinary court.  Major Robinson stated that she had verified the plaintiff's hearing impairment.  Despite finding that the plaintiff's hearing impairment made the situation confusing, the plaintiff was still found guilty and sentenced to 12 weeks isolation, no phone or outside contact.  While in isolation, the plaintiff requested a conference with a Catholic chaplain and an appointment with psychiatry.  These requests were denied.  The plaintiff was also denied the ability to maintain proper hygiene.

On December 23, 2014, the plaintiff filed a disciplinary appeal with Warden Seth Smith, and requested a copy of the disciplinary board's ruling and the evidence submitted.  As of the date of the filing of the plaintiff's Amended Complaint, he had not received a response to his appeal.

On January 12, 2015, the plaintiff was transported to the LSU Medical Center Orthopedic Clinic in New Orleans.  He was examined by Drs. De La Rosa and Whatley, who determined that it was too late for corrective surgery.  As a result of the delay in treatment, the plaintiff's knee healed in an improper position.  The plaintiff's only treatment option is a total knee replacement, and he was informed that he is too young to undergo the same.  The plaintiff is in constant pain which restricts his abilities to participate in sports or perform work.

On January 20, 2015, the plaintiff's attorney attempted to arrange an in person conference with the plaintiff, but was informed by the Assistant Warden for Security that the plaintiff was currently quarantined due to chicken pox, which was false.

The Court will first address the plaintiff's ADA and RA claims.  As to any official capacity claims the plaintiff is asserting against the defendants under the ADA and the RA, the Court finds that the plaintiff has failed to allege facts that state a cause of action under these statutes.  "The ADA is a federal anti-discrimination statute designed '[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'"  *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574 (5th Cir. 2002), *quoting Rizzo v. Children's World Learning Centers, Inc.*, 173 F.3d 254, 261 (5th Cir. 1999).  Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.[2]  The ADA defines a "public entity" to include "any department, agency, ... or other instrumentality of a State," 42 U.S.C. § 12131(1)(B), and it has been held that "[s]tate prisons fall squarely within the statutory definition of 'public entity.'"  *Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998).  Thus, "the plain text of Title II of the ADA unambiguously extends to state prison inmates."  *Id.* at 213.

Notwithstanding, punitive damages may not be awarded in private suits brought under the ADA, *Barnes v. Gorman*, 536 U.S. 181, 189 (2002), and "[a] plaintiff asserting a private cause of action for violation of the ADA ... may only recover compensatory damages upon a showing of intentional discrimination."  *Delano- Pyle v. Victoria County, Texas, supra*, 302 F.3d

---

[2] Similarly, under the Rehabilitation Act or RA, "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

at 574.  Accordingly, the plaintiff is not entitled to the punitive damages requested in his

Complaint in so far as the request applies to his ADA claim.

In order to establish a violation of the ADA, the plaintiff must be able to demonstrate (1)

that he is a qualified individual within the meaning of the Act, (2) that he is being excluded from

participation in or being denied the benefits of services, programs, or activities for which the

defendants are responsible, or is otherwise being discriminated against by the defendants, and (3)

that such exclusion, denial of benefits, or discrimination is by reason of his disability.

*Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997).

The plaintiff's allegations in the instant case do not meet this 3-part test *vis-a-vis* the

defendants.  The plaintiff does not assert that he was excluded from participation in or denied the

benefits of any prison services, programs or activities.  The plaintiff does not allege that he is

being discriminated against in any manner, much less by reason of his disability.  To the

contrary, the plaintiff alleges in his amended Complaint that, upon arrival at EHCC, his hearing

impairment was documented and a few days later he was provided with batteries for his hearing

aid and his hearing aid maintenance kit.  Accordingly, the Court recommends that the

defendants' Motions be granted as to the plaintiff's ADA and RA claims, dismissing these

claims, with prejudice, for failure to state a claim upon which relief can be granted.

Turning to the plaintiff's claims under § 1983, the Court first finds that the plaintiff has

failed to allege sufficient personal involvement on the part of defendants LeBlanc, Tanner, and

Hooper.  In order for a prison official to be found liable under § 1983, the official must have

been personally and directly involved in conduct causing an alleged deprivation of an inmate's

constitutional rights or there must be a causal connection between the actions of the official and

the constitutional violation sought to be redressed.  *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir.

1983).  Any allegation that the defendants are responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  *See also Bell v. Livingston*, 356 F. App'x. 715, 716–17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").  Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.  *Lozano v. Smith*, *supra*, 718 F.2d at 768.

Applying the foregoing standard, and upon a review of the plaintiff's Complaint as amended, the plaintiff has failed sufficiently to allege that defendants LeBlanc, Tanner, and Hooper have undertaken any action which may be characterized as a violation of the plaintiff's constitutional rights.  Any implied allegations of mere supervisory responsibility and/or negligent supervision on the parts of defendants LeBlanc, Tanner, and Hooper are not sufficient to support a finding of liability under § 1983.

With regards to the plaintiff's claim of deliberate indifference to his serious medical needs, in order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must allege that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985).  Whether the plaintiff has received the treatment or accommodation that he believes he should

have is not the issue. *Estelle v. Gamble*, *supra*. Nor do negligence, neglect, unsuccessful

treatment, or even medical malpractice, give rise to a § 1983 cause of action. *Varnado v.*

*Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991). Rather, "subjective recklessness as used in the

criminal law" is the appropriate definition of "deliberate indifference" under the Eighth

Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994). As stated in *Farmer*, to be

liable on a claim of deliberate indifference, an official "must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

the inference." *Id*. at 837. The deliberate indifference standard sets a very high bar: the plaintiff

must be able to establish that the defendants "refused to treat him, ignored his complaints,

intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince

a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*,

239 F.3d 752, 756 (5th Cir.2001), *quoting Estelle v. Gamble*, *supra*. Further, a mere delay in

providing medical treatment does not amount to a constitutional violation without both deliberate

indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th

Cir.1993).

In the instant matter, the plaintiff makes no allegations against defendants Smith, McKey,

Linzy, Robinson or Slater regarding the plaintiff's medical care which tends to show deliberate

indifference on the part of these defendants. Accordingly, the plaintiff's Complaint, as amended,

fails to state a claim for deliberate indifference to his serious medical needs against defendants

Smith, McKey, Linzy, Robinson or Slater.

As to defendants Hartley and Barrere, the plaintiff alleges that following the assault by

defendant Slater, defendant Hartley removed the plaintiff's hearing aid. The plaintiff further

alleges that he notified defendants Hartley and Barrere that he could not hear without his hearing

aids.  Due to the removal of his hearing aid, the plaintiff alleges that he was unable to communicate with the correctional officers or with the EMT who arrived to assist him.  As such, as to defendants Hartley and Barrere, the Motions to Dismiss should be denied.

As to defendants Raham Singh and Preety Singh, the plaintiff alleges that approximately two weeks after the fracture was diagnosed, he was examined by Dr. Wagganspack.  The plaintiff further alleges that Dr. Wagganspack attempted to have the plaintiff transported to LSU Medical Center for surgical repair of his injury, but transport was "obstructed/canceled by the Medical Director."  The plaintiff has identified defendant Raham Singh as "Medical Director La. Dept. of Corrections" and has identified defendant Preety Singh as "Medical Director of Elayn Hunt Correctional Center."  It is unclear whether the "Medical Director" the plaintiff is alleging to have caused a delay in his treatment resulting in substantial harm is either or both of these defendants.  Accepting as true the factual allegations contained in the amended Complaint, as to defendants R. Singh and P. Singh, the Motions to Dismiss should be denied.

Turning to the plaintiff's RICO claim, to state a claim under Section 1962, there must be (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise.  A pattern of racketeering activity requires two or more predicate acts and a demonstration that the predicates are related and amount to or oppose a threat of continued criminal activity.  B*rown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439-41 (5th Cir. 2000).

The plaintiff's allegation that "Defendants conspired and colluded with one-another to cover-up and suppress their actions" does not satisfy the elements of a civil RICO claim.  The plaintiff does not allege any federal crimes or a pattern of racketeering activity, a RICO

enterprise, or the other elements of a claim.  At such, the plaintiff's civil RICO claim should be dismissed.

To the extent that plaintiff raises an equal protection claim and claim under the Free Exercise Clause, these claims are without merit.  "To state an equal protection claim, [a prisoner] must allege, *inter alia*, that similarly situated individuals have been treated differently and he must also allege purposeful or intentional discrimination." *McKnight v. Eason*, 227 F. App'x. 356 (5th Cir. 2007).  "A prisoner must show that the prison official acted with a discriminatory purpose and thus cannot base an equal protection claim solely on a personal belief that he was a victim of discrimination…Vague and conclusory allegations [of discrimination] are insufficient to raise an equal protection claim." *Jebril v. Joslin* 2008 WL 416240 at *8 (S.D. Tex. 2008) (*citing Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir.1995); *Pedraza v. Me*yer, 919 F.2d 317, 318 n. 1 (5th Cir.1990)).  Plaintiff has made no allegations sufficient to support an equal protection claim.  As such, the plaintiff's equal protection claim should be dismissed.

The Free Exercise Clause of the First Amendment, as applied to the states through the Fourteenth Amendment, prohibits conduct which unreasonably impinges upon the free exercise of an inmate's religious beliefs.  While inmates retain their First Amendment religious rights notwithstanding their incarcerated status, the exercise of these rights is subject to reasonable restrictions and limitations necessitated by penological goals.  *O'Lone v. Shabazz*, 482 U.S. 342, 349 (1987).  *See also Baranowski v. Hart*, 486 F.3d 112, 120 (5th Cir. 2007), *citing Turner v. Safley*, 482 U.S. 78, 89 (1987).  A prison action or regulation that impinges upon an inmate's First Amendment constitutional rights is valid if it is reasonably related to legitimate penological interests.  *Turner v. Safely*, *supra*, 482 U.S. at 89.

The plaintiff alleges that following the disciplinary hearing he was sentenced to 12 weeks isolation and no phone or outside contact.  He further alleges that during that time he requested to meet with a Catholic Chaplain, which never occurred.  The plaintiff also alleges that "Defendants violated the Free Exercise clause by and thru deliberate indifference to properly treat medically."  The plaintiff does not associate any particular defendant with any act or omission that demonstrates a violation of the Free Exercise Clause.  As such, this claim should be dismissed.

To the extent the plaintiff is complaining of a violation of his due process rights in connection with the disciplinary proceedings, an inmate does not have a constitutional right to have his prison disciplinary or administrative proceedings properly investigated, handled, or favorably resolved.  *Mahogany v. Miller,* 252 F.App'x. 593, 595 (5th Cir. 2007), and there is no procedural due process right inherent in such a claim.  As stated by the United States Court of Appeal for the Fifth Circuit in *Geiger v. Jowers,* 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction.  As he relies on legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.  *Id*. at 373-74.

This conclusion is equally applicable in the context of prison disciplinary proceedings. *See, e.g., Sanchez v. Grounds,* 2014 WL 1049164, *2 (E.D. Tex. Mar. 14, 2014) (finding that an inmate's claim regarding a failure to conduct a "proper investigation" of a disciplinary charge "did not amount to a constitutional deprivation");  and *Jackson v. Mizell,* 2009 WL 1792774, *7 n.11 (E.D. La. June 23, 2009) (noting that "the Court fails to see how a prisoner could ever state a cognizable claim alleging an inadequate disciplinary investigation").

Further, the failure of prison officials to follow prison rules or regulations does not amount to a violation of the plaintiff's constitutional rights. *Jackson v. Cain*, 864 F.3d 1235, 1252 (5th Cir. 1989). Nor does this Court sit as some form of an appellate court to review errors made by state tribunals that do not affect an inmate's constitutional rights. *See, e.g., Coleman v. Director, TDCJ-CID,* 2009 WL 56947, *2 (E.D. Tex. Jan. 7, 2009) (noting, in the context of an inmate's habeas corpus proceeding arising out of a prison disciplinary proceeding, that "[i]n the course of reviewing state proceedings, a federal court does not sit as a super state appellate court.").

Moreover, in *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court noted that in some rare situations, an inmate may be entitled to procedural Due Process when state action exceeds the sentence in such an unexpected way as to give rise to protection by the Due Process Clause of its own force. Normally, however, the Due Process Clause, itself, does not afford an inmate a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). It is only those restrictions that impose "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life" that will invoke the prospect of state-created liberty interests. *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005).

Thus, while *Sandin* made it clear that punishments that impact upon the duration of confinement, or which exceed the sentence in an unexpected manner, or that impose "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life" will give rise to the protection afforded by the Due Process Clause, more routine disciplinary action will not invoke this constitutional protection. *Sandin,* 515 U.S. at 484. In the instant case, the plaintiff was sentenced to a custody status change. This punishment does not amount to disciplinary action that infringes upon a constitutionally protected liberty interest which would invoke the

protection of the Due Process Clause of the Fourteenth Amendment.  *See Dickerson v. Cain,* 241

F.App'x. 193 (5th Cir. 2007) (holding that the plaintiff failed to show that placement in Camp J

at LSP presents "an atypical or significant hardship beyond the ordinary incidents of prison

life").  The plaintiff's claim here likewise fails to make such a showing, and his claims against

defendants Robinson and Smith should be dismissed.

Turning to the plaintiff's claim against defendant McKey, a substantive right of access to

the courts has long been recognized.  *Lewis v. Casey,* 518 U.S. 343, 347 (1996), *citing Bounds v.*

*Smith,* 430 U.S. 817, 821 (1977).  Specifically, access to the courts is incorporated into the First

Amendment right to petition the government for redress of grievances.  *Driggers v. Cruz,* 740

F.3d 333, 336–37 (5th Cir. 2014) citing *Bill Johnson's Rests., Inc. v. N.L.R.B.,* 461 U.S. 731

(1983).  In order to prevail on a claim of interference with access to the courts, an inmate

claimant must be able to show that has he suffered some cognizable legal prejudice or detriment

as a result of the defendant's actions.  *Eason v. Thaler,* 73 F.3d 1322, 1328 (5th Cir. 1996).  An

inmate's right to seek access to the courts is limited to the making of non-frivolous claims

involving the assertion of legitimate constitutional rights.  *Johnson v. Rodriguez,* 110 F.3d 299,

311 (5th Cir. 1997).  Therefore, because the right to access to the courts "rest[s] on the

recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot

have suffered injury by being shut out of court," *Christopher v. Harbury,* 536 U.S. 403, 415

(2002), "the underlying cause of action, whether anticipated or lost, is an element that must be

described in the complaint."  *Id.*

In the instant matter, the plaintiff alleges that his "Federal Civil Attorney," Stephen

Haedicke, attempted to arrange an in-person conference with the plaintiff through the "Assistant

Warden for Security's" who the plaintiff has identified as defendant McKey.  The plaintiff's

counsel was allegedly denied visitation.  The plaintiff does not identify the underlying cause of

action for which attorney Haedicke was attempting to meet with the plaintiff.  Nor does the

plaintiff allege that he suffered some cognizable legal prejudice or detriment as a result of the

defendant's actions.  As such, the plaintiff's claims against defendant McKey should be

dismissed.

With regards to the plaintiff's allegations that defendant Linzy yelled in his face, and

other officers brandished knives, a defendant's mere expression of anger or use of offensive or

threatening language does not amount to a constitutional violation, *see McFadden v. Lucas,* 713

F.2d 143, 146 (5th Cir. 1983) (finding that "mere threatening language and gestures of a

custodial officer do not, even if true, amount to constitutional violations").  As such, the

plaintiff's claim against defendant Linzy should be dismissed.

Turning to the plaintiff's excessive force claim asserted against defendant Slater, use of

force by a prison official is excessive and violates the Eighth Amendment to the United States

Constitution only when such force is applied maliciously and sadistically for the very purpose of

causing harm rather than in a good faith effort to maintain or restore discipline.  *Wilkins v.*

*Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Not every

malicious or malevolent action by a prison guard gives rise to a federal cause of action, however,

and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily

excludes from constitutional recognition *de minimis* uses of physical force, provided that such

force is not of a sort "repugnant to the conscience of mankind."  *Hudson v. McMillian, supra*,

503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986).

The fact that an inmate may have sustained only minimal injury, however, does not end

the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not

lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38.  Notwithstanding, the Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances.  Other factors that may be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response.  *Hudson v. McMillian, supra*, 503 U.S. at 7.

In his amended Complaint, the plaintiff alleges that defendant Slater attacked him from behind as the plaintiff stood with his hands behind his back, waiting to be restrained and attempting to understand what was being asked of him.  The plaintiff further alleges that his knee was fractured as a result of the attack by defendant Slater.  The allegations asserted in the amended complaint, accepted as true for the purposes of evaluating the defendants' Motions, are sufficient to state a claim for excessive use of force.  As such, the defendants' Motions should be denied as to the plaintiff's claim for excessive use of force asserted against defendant Slater.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367.  In the instant case, having recommended that several of the plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that the defendants' Motions to Dismiss (R. Docs. 25 and 41) be granted in part, and denied in part as follows.  It is recommended that the plaintiff's claims against Tim Delaney be dismissed, without prejudice, for failure to timely effect service upon him.  It is further recommend that the plaintiff's claims for monetary damages, asserted against the moving defendants in their official capacities, be dismissed.  It is further recommended that the following claims be dismissed, with prejudice, for failure to state claim upon which relief may be granted:  (1) Americans With Disabilities Act claim; (2) Rehabilitation Act claim; (3) all claims against defendants LeBlanc, Tanner, and Hooper ; (4) RICO claim; (5) equal protection claim; (6) free exercise claim; (7) disciplinary hearing and appeal claims against defendants Robinson and Smith; (8) access to courts claim against defendant McKey; and (9) threatening language claim against defendant Linzy.  It is further recommended that supplemental jurisdiction over the plaintiff's state law claims be declined.

As to the plaintiff's claim of deliberate indifference to his serious medical needs, it is recommended that this claim be dismissed with prejudice against all remaining moving defendants, except defendants Hartley, Barrere, R. Singh, and P. Singh.  It is further recommended that, as to the plaintiff's excessive force claim asserted against defendant Slater, the Motions be denied.  It is further recommended that this matter be referred back to the undersigned for further proceedings.

Signed in Baton Rouge, Louisiana, on February 22, 2017.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**