UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PHILIP GIBSON (#456583)                               CIVIL ACTION

VERSUS

                                                      NO. 16-354-SDD-RLB

JAMES LEBLANC, ET AL.

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on April 24, 2018.

                                            _____
                                            RICHARD L. BOURGEOIS, JR.
                                            UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PHILIP GIBSON (#456583)                                    CIVIL ACTION

VERSUS

                                                                         NO. 16-354-SDD-RLB

JAMES LEBLANC, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Motions to Dismiss filed on behalf of defendants Dr. Brian Perry, Dr. John Whatley, Dr. Matthew De La Rosa, Dr. Rayburn Fox, and Dr. James Rose (R. Docs. 110 and 111). The motions are not opposed.

The *pro se* plaintiff, an inmate incarcerated at Elayn Hunt Correctional Center ("EHCC"), St. Gabriel, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983, the Americans With Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*. (RICO) against numerous defendants, complaining that his constitutional rights were violated when the defendants failed to follow the prison's policy with respect to hearing impaired inmates, resulting in excessive force being used against the plaintiff, and causing injury to the plaintiff to which the defendants were deliberately indifferent.[1] The plaintiff seeks punitive and compensatory damages, as well as declaratory and injunctive relief.

Defendants Dr. Brian Perry, Dr. John Whatley, Dr. Matthew De La Rosa, Dr. Rayburn Fox, and Dr. James Rose first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's § 1983 claims against them in their official capacities. In this regard, the defendants are correct that § 1983 does not provide a

---

[1] The plaintiff's ADA, RA, and RICO claims have been previously dismissed. *See* R. Docs. 67 and 72.

federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, the plaintiff's § 1983 claims asserted against the defendants in their official capacities for monetary damages are subject to dismissal. In contrast, the plaintiff's § 1983 claims for monetary damages asserted against the defendants in their individual capacities remain viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id*. at 29.

Turning to the plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, the defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint as amended, the plaintiff alleges the following. Upon arrival at EHCC on November 10, 2014, the staff properly noted that the plaintiff is deaf in his left ear, partially deaf in his right ear, and requires the assistance of a hearing aid. On December 1, 2014, at approximately 7:00 a.m., the plaintiff was transported to the infirmary where he remained for over two hours. Around 3:00 p.m., CO George arrived for the evening pill call. The plaintiff attempted to explain to CO George why he was not present for the morning pill call, but CO George stated that the plaintiff was present but didn't get up. Several nearby inmates attempted to verify the plaintiff's whereabouts. CO Murray then arrived and the plaintiff and the nearby inmates again attempted to explain why the plaintiff had missed the morning pill call.

CO Murray informed the plaintiff that he would not receive his medication, and the plaintiff requested a grievance form which was denied.  The plaintiff then requested to speak with a ranking officer, and CO Murry ordered the plaintiff to "stop throwing his hands up in his face," even though the plaintiff was standing approximately six feet away from CO Murry.  Co Murry then ordered that the tier be locked down and ordered CO Jones to, "call Slater and Lt. Slater only."

Lt. Slater arrive a few minutes later and CO Murry informed him that the plaintiff was "being disruptive and throwing his hands up."  Lt. Slater attempted to question the plaintiff, but CO Murry kept interrupting him and began to speak over the plaintiff.  Due to his hearing impairment, the plaintiff was no longer able to understand the multiple orders and statements being issued by the correctional officers.  As he was unable to comprehend what orders were being issued, he turned around and placed his hands behind his back in order to be restrained.  The plaintiff then asked Lt. Slater who he should respond to and Lt. Slater charged the plaintiff from behind.  As a result, the plaintiff suffered a knee fracture.

The plaintiff was then taken outside the building and laid on the walkway.  Captain Hartley arrived and removed the plaintiff's hearing aid from his right ear rendering the plaintiff unable to understand or communicate with the EMT.  He attempted to inform the various correctional officers, including Asst. Warden Barrere, that he could not hear without the assistance of his hearing aid.  Captain Linzy then began yelling foul language close to the plaintiff's face.  Several unspecified officers then began brandishing knives and removing hair from their forearms, which the plaintiff interpreted to be a threat.

The plaintiff was then transported to the infirmary where he was diagnosed with a Schatzker II tibial plateau fracture to his right knee.  An ace bandage was applied and the plaintiff was transported to lock-down.

On December 2, 2014 the plaintiff was examined by Dr. Roundtree, who recommended surgical repair as soon as possible. The plaintiff was administered pain medication, and a knee immobilizer was applied. He was then transported to the Skilled Nursing Unit.

On December 4, 2014, with only two minutes notice, the plaintiff was informed of his disciplinary hearing. The plaintiff notified his inmate counsel that he would need to present multiple witnesses and documents at the hearing. The plaintiff's requests to present witnesses and documents were denied by Major Robinson. The plaintiff then informed Major Robinson of his hearing impairment, and Major Robinson deferred ruling until she was able to verify the same.

On December 14, 2014 the plaintiff was examined by Dr. Waggenspack, an orthopedic specialist. Dr. Waggenspack attempted to have the plaintiff transported for immediate surgery, but transport was obstructed or canceled by the Medical Director.

On December 16, 2014, the plaintiff returned to disciplinary court. Major Robinson stated that she had verified the plaintiff's hearing impairment. Despite finding that the plaintiff's hearing impairment made the situation confusing, the plaintiff was still found guilty and sentenced to 12 weeks isolation, no phone or outside contact. While in isolation, the plaintiff requested a conference with a Catholic chaplain and an appointment with psychiatry. These requests were denied. The plaintiff was also denied the ability to maintain proper hygiene.

On December 23, 2014, the plaintiff filed a disciplinary appeal with Warden Seth Smith, and requested a copy of the disciplinary board's ruling and the evidence submitted. As of the date of the filing of the plaintiff's Amended Complaint, he had not received a response to his appeal.

On January 12, 2015, the plaintiff was transported to the LSU Medical Center Orthopedic Clinic in New Orleans. He was examined by Drs. De La Rosa and Whatley, who determined

that it was too late for corrective surgery. As a result of the delay in treatment, the plaintiff's knee healed in an improper position. The plaintiff's only treatment option is a total knee replacement, and he was informed that he is too young to undergo the same. The plaintiff is in constant pain which restricts his abilities to participate in sports or perform work.

On January 20, 2015, the plaintiff's attorney attempted to arrange an in person conference with the plaintiff, but was informed by the Assistant Warden for Security that the plaintiff was currently quarantined due to chicken pox, which was false.

In order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that the defendants are responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 F. App'x. 715, 716–17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

With regards to the plaintiff's claim of deliberate indifference to his serious medical needs, in order for there to be liability in connection with a claim of deliberate medical

indifference, an inmate plaintiff must allege that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble*, *supra*. Nor do negligence, neglect, unsuccessful treatment, or even medical malpractice, give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994). As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), *quoting Estelle v. Gamble*, *supra*. Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993).

Applying the foregoing standards, and upon a review of the plaintiff's Complaint as amended, the plaintiff has failed sufficiently to allege that any of the moving defendants has undertaken any action which may be characterized as a violation of the plaintiff's constitutional

rights.[2]  None are alleged to have exerted any force on plaintiff, excessive or not.  Drs. De La Rosa and Whatley, orthopedic specialists, are only alleged to have seen the plaintiff and concluded that it was too late to have corrective surgery done.  Even if taken as true, any allegation of medical indifference has nothing to do with those physician defendants.  No facts at all are specifically alleged against Drs. Perry, Fox or Rose.  The plaintiff's conclusory allegations and allegations of mere supervisory responsibility and/or negligent supervision on the parts of the defendants are not sufficient to support a finding of liability under § 1983.  Accordingly, the plaintiff's Complaint, as amended, fails to state a claim for deliberate indifference to his serious medical needs or for any other constitutional violation against the moving defendants.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that the defendants' Motions to Dismiss (R. Docs. 110 and 111) be granted and the plaintiff's claims against defendants Dr. Brian Perry, Dr. John Whatley, Dr. Matthew De La Rosa, Dr. Rayburn Fox, and Dr. James Rose be dismissed with prejudice.  It is further recommended that this matter be referred back to the undersigned for further proceedings.

Signed in Baton Rouge, Louisiana, on April 24, 2018.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] As to each of the moving defendants, the plaintiff alleges in a conclusory fashion that they all serve in some unspecified supervisory capacity, but does not allege any specific action or inaction on the part of any moving defendant.