## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**PHILIP GIBSON (#456583)**                                    **CIVIL ACTION**

**VERSUS**

                                                               **NO. 16-354-SDD-RLB**

**JAMES LEBLANC, ET AL.**

<u>**NOTICE**</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 13, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PHILIP GIBSON (#456583)                                    CIVIL ACTION

VERSUS
                                                           NO. 16-354-SDD-RLB
JAMES LEBLANC, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the remaining defendants' motion for summary judgment (R. Doc. 161). The Motion is opposed. *See* R. Doc. 164.

The *pro se* plaintiff, an inmate incarcerated at Elayn Hunt Correctional Center ("EHCC"), St. Gabriel, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983, the Americans With Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (RICO) against numerous defendants, complaining that his constitutional rights were violated when the defendants failed to follow the prison's policy with respect to hearing impaired inmates, resulting in excessive force being used against the plaintiff, and causing injury to the plaintiff to which the defendants were deliberately indifferent.[1] The plaintiff seeks punitive and compensatory damages, as well as declaratory and injunctive relief.

The remaining defendants, Lindel Slater, Todd Barrere, Marvin Hartley, Dr. Raman Singh and Dr. Preety Singh, move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's pertinent Administrative Remedy proceeding, and a certified copy of the plaintiff's medical records.

---

[1] The plaintiff's ADA, RA, and RICO claims have been previously dismissed. *See* R. Docs. 67 and 72.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, as amended, the plaintiff alleges the following:  Upon arrival at EHCC on November 10, 2014, the staff properly noted that the plaintiff is deaf in his left ear, partially deaf in his right ear, and requires the assistance of a hearing aid.  On December 1, 2014, at approximately 7:00 a.m., the plaintiff was transported to the infirmary where he remained for over two hours.  Around 3:00 p.m., CO George arrived for the evening pill call.  The plaintiff attempted to explain to CO George why he was not present for the morning pill call, but CO George stated that the plaintiff was present but didn't get up.  Several nearby inmates attempted to verify the plaintiff's whereabouts.  CO Murray then arrived and the plaintiff and the nearby inmates again attempted to explain why the plaintiff had missed the morning pill call.

CO Murray informed the plaintiff that he would not receive his medication, and the plaintiff requested a grievance form which was denied.  The plaintiff then requested to speak with a ranking officer, and CO Murry ordered the plaintiff to "stop throwing his hands up in his face," even though the plaintiff was standing approximately six feet away from CO Murry.  Co Murry then ordered that the tier be locked down and ordered CO Jones to, "call Slater and Lt. Slater only."

Lt. Slater arrived a few minutes later and CO Murry informed him that the plaintiff was "being disruptive and throwing his hands up."  Lt. Slater attempted to question the plaintiff, but CO Murry kept interrupting him and began to speak over the plaintiff.  Due to his hearing impairment, the plaintiff was no longer able to understand the multiple orders and statements being issued by the correctional officers.  As he was unable to comprehend what orders were being issued, he turned around and placed his hands behind his back in order to be restrained. The plaintiff then asked Lt. Slater who he should respond to and Lt. Slater charged the plaintiff from behind.  As a result, the plaintiff suffered a knee fracture.

The plaintiff was then taken outside the building and laid on the walkway. Captain Hartley arrived and removed the plaintiff's hearing aid from his right ear rendering the plaintiff unable to understand or communicate with the EMT. He attempted to inform the various correctional officers, including Asst. Warden Barrere, that he could not hear without the assistance of his hearing aid. Captain Linzy then began yelling foul language close to the plaintiff's face. Several unspecified officers then began brandishing knives and removing hair from their forearms, which the plaintiff interpreted to be a threat.

The plaintiff was then transported to the infirmary where he was diagnosed with a Schatzker II tibial plateau fracture to his right knee. An ace bandage was applied and the plaintiff was transported to lock-down.

On December 2, 2014 the plaintiff was examined by Dr. Roundtree, who recommended surgical repair as soon as possible. The plaintiff was administered pain medication, and a knee immobilizer was applied. He was then transported to the Skilled Nursing Unit.

On December 14, 2014 the plaintiff was examined by Dr. Waggenspack, an orthopedic specialist. Dr. Waggenspack attempted to have the plaintiff transported for immediate surgery, but transport was obstructed or canceled by the Medical Director.

On January 12, 2015, the plaintiff was transported to the LSU Medical Center Orthopedic Clinic in New Orleans. He was examined by Drs. De La Rosa and Whatley, who determined that it was too late for corrective surgery. As a result of the delay in treatment, the plaintiff's knee healed in an improper position. The plaintiff's only treatment option is a total knee replacement, and he was informed that he is too young to undergo the same. The plaintiff is in constant pain which restricts his abilities to participate in sports or perform work.

In response to the plaintiff's allegations, the defendants first contend that the claims asserted in this proceeding are time-barred. Specifically, the defendants assert that more than one year of un-tolled time elapsed after the referenced incident before the plaintiff filed his Complaint herein.

Inasmuch as there is no federal statute of limitations for claims brought pursuant to 42 U.S.C. § 1983, a federal court must borrow the forum state's general personal injury limitations period for such claims. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In Louisiana, the applicable period of limitations is one year. La. Civ. Code Art. 3492.[2] Moreover, under federal law, a cause of action under 42 U.S.C. § 1983 accrues "when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995) (citations and internal quotation marks omitted). A plaintiff need not realize that a legal cause of action exists but must only have knowledge of the facts that support a claim. *Id.* Under Louisiana law, a party pleading a limitations defense normally has the burden of establishing the elements of that defense. *See Savoy v. St. Landry Parish Council*, 2009 WL 4571851, *3 (W.D. La. Dec. 1, 2009). However, when the face of the plaintiff's Complaint reflects that more than a year has passed since the events complained of, the burden of proof shifts to the plaintiff to show that the limitations period has been interrupted or tolled. *Id.*

In the instant case, the earliest incident complained of by the plaintiff occurred on December 1, 2014, by which date the plaintiff was possessed of sufficient information to place him on notice of the existence of his cause of action regarding excessive force and deliberate indifference to serious medical needs by defendants Slater, Hartley and Barrere. Accordingly,

---

[2] *See* La. Civ. Code Art. 3456

the plaintiff's claims accrued on that date, and he had one year within which to file a complaint in this Court. Ordinarily, therefore, any claim that the plaintiff may have had against the defendants arising out of the incident complained of would be seen to have prescribed no later than December 1, 2015, the one-year anniversary of the incident. Further, inasmuch as the plaintiff did not file his federal Complaint until, at the earliest, May 16, 2016, the date that he apparently signed it, it appears from the face of the Complaint that his claim is time-barred. Accordingly, the burden of proof shifts to the plaintiff to show that the limitations period in this case was interrupted or tolled during the one-year period.

In seeking to avoid the effect of the one-year limitations period, the plaintiff contends that he filed an administrative grievance with prison officials relative to the claims asserted herein. In computing the applicable limitations period, this Court is obligated to take into account the time during which the administrative proceedings were pending within the prison system. *See Harris v. Hegmann*, 198 F.3d 153, 158-59 (5th Cir. 1999) (finding that the pendency of a properly-filed administrative grievance will act to toll or suspend the running of the one-year limitations period for a prisoner's claim).

The filing of an administrative grievance, however, only tolls or suspends, and does not interrupt, the running of the prescriptive period. *See* La. R.S. 15:1172(E) (providing that the limitations period for a prisoner's claim "shall be suspended upon the filing of [an administrative] ... grievance and shall continue to be suspended until the final agency decision is delivered"). Thus, this Court is required to count against the plaintiff the passage of days that elapsed both before the filing of the pertinent administrative grievance and after the conclusion of the administrative proceedings. *See Adams v. Stalder*, 934 So.2d 722, 725-26 (La. App. 1st Cir. 2006) (explaining that with a suspension of the limitations period, in contrast to an

interruption, "the period of suspension is not counted toward the accrual of prescription but the time that has previously run is counted.... In other words, ... the clock merely stops running during the suspension, and thereafter the obligee has only so much of the one year as was remaining when the suspension began").

Applying the foregoing to the events of December 1, 2014, the Court has concluded that the plaintiff's claim accrued and the one-year limitations period commenced to run on that date. In addition, the record reflects that the plaintiff submitted a request for administrative remedy to prison officials thereafter. The first question for the Court to consider is the date upon which that administrative grievance tolled the limitations period. In this regard, it appears that the plaintiff's grievance is hand-dated January 29, 2015. As such, 59 days elapsed between the occurrence of the event complained of and the filing of the plaintiff's administrative grievance.

The plaintiff's administrative proceedings remained pending and thereby suspended the running of the limitations period until those proceedings were concluded by the plaintiff's receipt of the final agency response. *See* La. R.S. 15:1172(E) (providing that the limitations period is "suspended until the final agency decision is *delivered*" (emphasis added)); *Harris v. Hegmann, supra*, 198 F.3d at 160 (noting that the pertinent date is the date an inmate "receive[s] final notice that his administrative complaint was dismissed"). Accordingly, the applicable limitations period began to run again on that date. However, the Court is unable to determine from the record the date on which the plaintiff received the final agency response, and is therefore unable to determine how many days remained in the one-year limitations period.

Defendants assert that the plaintiff's administrative remedy proceeding concluded on June 22, 2015, the date the final agency response was signed. However, it is clear that the plaintiff did not receive the final agency response on that date because it was not received by the

EHCC ARP Office until June 30, 2015. *See* R. Doc. 161-3, p. 5. In addition, there is nothing that demonstrates when the plaintiff actually received the final agency response.

If the plaintiff received the final agency response on the same day it was received by the prison, then 306 days remained in the limitations period and the plaintiff had until May 2, 2016 to timely file his Complaint.[3]

The plaintiff's Complaint was signed and dated by him on May 16, 2016.[4] Accordingly, it appears the Complaint was not filed within the one-year limitations period. However, the Court is unable to determine whether the plaintiff's claims are timely or untimely due to the lack of documentation as to when the plaintiff received the final agency response. As such, the defendants' Motion should be denied in this regard.

Defendants Asst. Warden Barrere, Dr. R. Singh, and Dr. P. Singh next assert that they are entitled to qualified immunity in connection with the plaintiff's claim for deliberate indifference to his serious medical needs. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the

---

[3] The actual filing deadline was May 1, 2016; however, May 1, 2016 was a Sunday.

[4] The courts of this Circuit have long concluded that the prison mailbox rule applies to the filing of pleadings submitted to courts by Louisiana *pro se* inmates. Pursuant to that rule, an inmate's pleadings are considered to be filed on the date that they are presented to prison officials or placed into the prison mailing system for transmission to the Court, not on the date that they are ultimately received or docketed by the Court. *See Cooper v. Brookshire*, 70 F.3d 377, 379-80 (5th Cir. 1995); *Vicks v. Griffin*, 2008 WL 553186, *3 (E.D. La. Feb. 28, 2008). The inherent basis for the rule is a recognition that, "[u]nskilled in law, unaided by counsel, and unable to leave the prison, [a prisoner's] control over the processing of his [pleadings] necessarily ceases as soon as he hands it over to the only public officials to whom he has access – the prison authorities." *Cooper v. Brookshire, supra*, 70 F.3d at 379, *quoting Houston v. Lack*, 487 U.S. 266, 271-72 (1988). The *Cooper* court also recognized that application of the rule allows courts to sidestep such potentially difficult issues as the possible motivation of prison officials to delay or obstruct the filing of inmates' complaints, and "pretermits time-consuming examinations of the circumstances behind any delay." *Id.* Thus, in the absence of evidence to the contrary, courts have generally presumed that the date that an inmate has signed and dated his Complaint is the date that he has given it to prison officials for mailing to the courts. *See Toomer v. Cain*, 2010 WL 4723365, n. 3 (E.D. La. July 30, 2010) (finding that, "[g]enerally, a court will look to the date a prisoner signed his pleading")

light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.*

Undertaking the qualified immunity analysis, the Court finds that the defendants' motion should be granted in part. Specifically, the Court concludes that defendants Dr. R. Singh and Dr. P. Singh are entitled to qualified immunity.

In order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must allege that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble*, *supra*. Nor do negligence, neglect, unsuccessful treatment, or even medical malpractice, give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994).

As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The deliberate indifference

standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), *quoting Estelle v. Gamble*, *supra*.  Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993).

As to defendant Barrere, the plaintiff alleges in his verified Complaint that following the assault by defendant Slater, defendant Hartley removed the plaintiff's hearing aid.  The plaintiff further alleges that he notified defendants Hartley and Barrere that he could not hear without his hearing aids.  Due to the removal of his hearing aid, the plaintiff alleges that he was unable to communicate with the correctional officers or with the EMT who arrived to assist him.  At no point did defendant Barrere intervene.  As such, the plaintiff's verified allegations evidence a wanton disregard for the plaintiff's serious medical needs on the part of defendant Barrere, and the defendants' Motion should be denied in this regard.

As to defendants Raham Singh and Preety Singh, the plaintiff alleges that approximately two weeks after the fracture was diagnosed, he was examined by Dr. Waggenspack.  The plaintiff further alleges that Dr. Waggenspack attempted to have the plaintiff transported to LSU Medical Center for surgical repair of his injury, but transport was "obstructed/canceled by the Medical Director."  The plaintiff has identified defendant Raham Singh as "Medical Director La. Dept. of Corrections" and has identified defendant Preety Singh as "Medical Director of Elayn Hunt Correctional Center."  It is unclear whether the "Medical Director" the plaintiff is alleging to have caused a delay in his treatment resulting in substantial harm is either or both of these

defendants. Regardless of which Medical Director the plaintiff alleges obstructed his surgery, the plaintiff's allegation is unsupported by the record, specifically the plaintiff's own medical records submitted by the defendants in support of their Motion for Summary Judgment.

A review of the plaintiff's medical records reveals that, on December 15, 2014, Dr. Waggenspack recommended an "urgent surgery eval for ORIF w/in next week." *See* R. Doc. 161-6, p. 31 (Bates No. 231). The request for a surgery evaluation was received by the LSU hospital consultant on December 16, 2014 and an appointment was requested by the LSU hospital coordinator on December 17, 2014. The appointment was set for January 12, 2015. *See* R. Doc. 161-5, p. 44 (Bates No. 144).

The plaintiff was seen at LSU on January 12, 2015 and a CT was ordered to decide on optimal treatment, meaning letting the fracture heal on its own or operative intervention. *See* R. Doc. 161-5, p. 93 (Bates No. 193). On February 23, 2015, after the CT was reviewed, Dr. Whatley explained to the plaintiff that the risks of operative intervention outweighed the non-operative risks. As such, surgery was not recommended. *See* R. Doc. 161-5, p. 73 (Bates No. 173).

It appears that the plaintiff was confused as to Dr. Waggenspack's recommendation which was not for surgery to be done but for the plaintiff to be evaluated for the possibility of operative intervention, which was ultimately never recommended. Accordingly, the plaintiff's allegation that his transport for surgery was obstructed or canceled by the Medical Director is unsupported by the record.

The plaintiff has not alleged any further personal involvement on the parts of defendants Dr. R. Singh and Dr. P. Singh, and any implied allegation that these defendants are responsible for the actions of his subordinates or co-employees is alone insufficient to state a claim under §

1983.  *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).  Further, in the absence of direct personal participation by a supervisory official in the alleged constitutional violation, the plaintiff must allege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies, or as a result of a breach by the supervisor of an affirmative duty specially imposed upon him by state law.  *Lozano v. Smith, supra*.  The plaintiff has made no such allegations, and the defendants' Motion should be granted as to defendants Dr. R. Singh and Dr. P. Singh.

## RECOMMENDATION

It is recommended that the defendant's Motion for Summary Judgment (R. Doc. 161) be granted in part, and the plaintiff's claims against defendants Dr. Raman Singh and Dr. Preety Singh be dismissed, with prejudice.  It is further recommended that in all other regards the Motion be denied, and that this matter be referred back to the Magistrate Judge for further proceedings herein.

Signed in Baton Rouge, Louisiana, on June 13, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**