UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| PHILIP GIBSON (#456583) | CIVIL ACTION |
| VERSUS | |
| JAMES LEBLANC, ET AL. | NO. 16-354-SDD-RLB |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 16, 2019.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| PHILIP GIBSON (#456583) | CIVIL ACTION |
| VERSUS | |
| JAMES LEBLANC, ET AL. | NO. 16-354-SDD-RLB |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the remaining defendants' Motion for Summary Judgment (R. Doc. 188). The Motion is not opposed.

The *pro se* plaintiff, an inmate incarcerated at Elayn Hunt Correctional Center ("EHCC"), St. Gabriel, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983, the Americans With Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*. (RICO) against numerous defendants, complaining that his constitutional rights were violated when the defendants failed to follow the prison's policy with respect to hearing impaired inmates, resulting in excessive force being used against the plaintiff, and causing injury to the plaintiff to which the defendants were deliberately indifferent.[1] The plaintiff seeks punitive and compensatory damages, as well as declaratory and injunctive relief.

The remaining defendants[2], Lindel Slater, Todd Barrere, and Marvin Hartley move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's pertinent Administrative Remedy proceeding, and a certified copy of Mail Room Call Out Sheet & Receipt.

---

[1] The plaintiff's ADA, RA, and RICO claims have been previously dismissed. *See* R. Docs. 67 and 72.
[2] The plaintiff's claims against defendants Dr. Raman Singh and Dr. Preety Singh have been previously dismissed. *See* R. Docs. 181 and 194.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Rule 56, Federal Rules of Civil Procedure.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248.  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.  *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075.  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.  *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, as amended, the plaintiff alleges the following: Upon arrival at EHCC on November 10, 2014, the staff properly noted that the plaintiff is deaf in his left ear, partially deaf in his right ear, and requires the assistance of a hearing aid. On December 1, 2014, at approximately 7:00 a.m., the plaintiff was transported to the infirmary where he remained for over two hours. Around 3:00 p.m., CO George arrived for the evening pill call. The plaintiff attempted to explain to CO George why he was not present for the morning pill call, but CO George stated that the plaintiff was present but didn't get up. Several nearby inmates attempted to verify the plaintiff's whereabouts. CO Murry then arrived and the plaintiff and the nearby inmates again attempted to explain why the plaintiff had missed the morning pill call.

CO Murry informed the plaintiff that he would not receive his medication, and the plaintiff requested a grievance form which was denied. The plaintiff then requested to speak with a ranking officer, and CO Murry ordered the plaintiff to "stop throwing his hands up in his face," even though the plaintiff was standing approximately six feet away from CO Murry. Co Murry then ordered that the tier be locked down and ordered CO Jones to, "call Slater and Lt. Slater only."

Lt. Slater arrived a few minutes later and CO Murry informed him that the plaintiff was "being disruptive and throwing his hands up." Lt. Slater attempted to question the plaintiff, but CO Murry kept interrupting him and began to speak over the plaintiff. Due to his hearing impairment, the plaintiff was no longer able to understand the multiple orders and statements being issued by the correctional officers. As he was unable to comprehend what orders were being issued, he turned around and placed his hands behind his back in order to be restrained. The plaintiff then asked Lt. Slater who he should respond to and Lt. Slater charged the plaintiff from behind. As a result, the plaintiff suffered a knee fracture.

The plaintiff was then taken outside the building and laid on the walkway. Captain Hartley arrived and removed the plaintiff's hearing aid from his right ear rendering the plaintiff unable to understand or communicate with the EMT. He attempted to inform the various correctional officers, including Asst. Warden Barrere, that he could not hear without the assistance of his hearing aid. Captain Linzy then began yelling foul language close to the plaintiff's face. Several unspecified officers then began brandishing knives and removing hair from their forearms, which the plaintiff interpreted to be a threat.

The plaintiff was then transported to the infirmary where he was diagnosed with a Schatzker II tibial plateau fracture to his right knee. An ace bandage was applied and the plaintiff was transported to lock-down.

On December 2, 2014 the plaintiff was examined by Dr. Roundtree, who recommended surgical repair as soon as possible. The plaintiff was administered pain medication, and a knee immobilizer was applied. He was then transported to the Skilled Nursing Unit.

On December 14, 2014 the plaintiff was examined by Dr. Waggenspack, an orthopedic specialist. Dr. Waggenspack attempted to have the plaintiff transported for immediate surgery, but transport was obstructed or canceled by the Medical Director.

On January 12, 2015, the plaintiff was transported to the LSU Medical Center Orthopedic Clinic in New Orleans. He was examined by Drs. De La Rosa and Whatley, who determined that it was too late for corrective surgery. As a result of the delay in treatment, the plaintiff's knee healed in an improper position. The plaintiff's only treatment option is a total knee replacement, and he was informed that he is too young to undergo the same. The plaintiff is in constant pain which restricts his abilities to participate in sports or perform work.

In response to the plaintiff's allegations, the defendants contend that the claims asserted in this proceeding are time-barred. Specifically, the defendants assert that more than one year of un-tolled time elapsed after the referenced incident before the plaintiff filed his Complaint herein.

Inasmuch as there is no federal statute of limitations for claims brought pursuant to 42 U.S.C. § 1983, a federal court must borrow the forum state's general personal injury limitations period for such claims. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In Louisiana, the applicable period of limitations is one year. La. Civ. Code Art. 3492.[3] Moreover, under federal law, a cause of action under 42 U.S.C. § 1983 accrues "when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995) (citations and internal quotation marks omitted). A plaintiff need not realize that a legal cause of action exists but must only have knowledge of the facts that support a claim. *Id.* Under Louisiana law, a party pleading a limitations defense normally has the burden of establishing the elements of that defense. *See Savoy v. St. Landry Parish Council*, 2009 WL 4571851, *3 (W.D. La. Dec. 1, 2009). However, when the face of the plaintiff's Complaint reflects that more than a year has passed since the events complained of, the burden of proof shifts to the plaintiff to show that the limitations period has been interrupted or tolled. *Id.*

In the instant case, the earliest incident complained of by the plaintiff occurred on December 1, 2014, by which date the plaintiff was possessed of sufficient information to place him on notice of the existence of his cause of action regarding excessive force and deliberate indifference to serious medical needs by defendants Slater, Hartley and Barrere. Accordingly,

---

[3] *See* La. Civ. Code Art. 3456

the plaintiff's claims accrued on that date, and he had one year within which to file a complaint in this Court. Ordinarily, therefore, any claim that the plaintiff may have had against the defendants arising out of the incident complained of would be seen to have prescribed no later than December 1, 2015, the one-year anniversary of the incident. Further, inasmuch as the plaintiff did not file his federal Complaint until, at the earliest, May 16, 2016, the date that he apparently signed it, it appears from the face of the Complaint that his claim is time-barred. Accordingly, the burden of proof shifts to the plaintiff to show that the limitations period in this case was interrupted or tolled during the one-year period.

In seeking to avoid the effect of the one-year limitations period when addressing the defendants' previously filed Motion for Summary Judgment, the plaintiff contended that he filed an administrative grievance with prison officials relative to the claims asserted herein. *See* R. Docs. 161 and 164. In computing the applicable limitations period, this Court is obligated to take into account the time during which the administrative proceedings were pending within the prison system. *See Harris v. Hegmann*, 198 F.3d 153, 158-59 (5th Cir. 1999) (finding that the pendency of a properly-filed administrative grievance will act to toll or suspend the running of the one-year limitations period for a prisoner's claim).

The filing of an administrative grievance, however, only tolls or suspends, and does not interrupt, the running of the prescriptive period. *See* La. R.S. 15:1172(E) (providing that the limitations period for a prisoner's claim "shall be suspended upon the filing of [an administrative] ... grievance and shall continue to be suspended until the final agency decision is delivered"). Thus, this Court is required to count against the plaintiff the passage of days that elapsed both before the filing of the pertinent administrative grievance and after the conclusion of the administrative proceedings. *See Adams v. Stalder*, 934 So.2d 722, 725-26 (La. App. 1st

Cir. 2006) (explaining that with a suspension of the limitations period, in contrast to an interruption, "the period of suspension is not counted toward the accrual of prescription but the time that has previously run is counted.... In other words, ... the clock merely stops running during the suspension, and thereafter the obligee has only so much of the one year as was remaining when the suspension began").

Applying the foregoing to the events of December 1, 2014, the Court has concluded that the plaintiff's claim accrued and the one-year limitations period commenced to run on that date. In addition, the record reflects that the plaintiff submitted a request for administrative remedy to prison officials thereafter. The first question for the Court to consider is the date upon which that administrative grievance tolled the limitations period. In this regard, it appears that the plaintiff's grievance is hand-dated January 29, 2015. As such, 59 days elapsed between the occurrence of the event complained of and the filing of the plaintiff's administrative grievance.

The plaintiff's administrative proceedings remained pending and thereby suspended the running of the limitations period until those proceedings were concluded by the plaintiff's receipt of the final agency response. *See* La. R.S. 15:1172(E) (providing that the limitations period is "suspended until the final agency decision is *delivered*" (emphasis added)); *Harris v. Hegmann, supra*, 198 F.3d at 160 (noting that the pertinent date is the date an inmate "receive[s] final notice that his administrative complaint was dismissed"). Accordingly, the applicable limitations period began to run again on that date.

In the instant matter, the plaintiff signed for receipt of the final agency response on July 7, 2015. *See* R. Doc. 188-4. At that time, 306 days remained in the limitations period and the plaintiff had until May 9, 2016 to timely file his Complaint.[4] The plaintiff's Complaint was

---

[4] The actual filing deadline was May 8, 2016; however, May 8, 2016 was a Sunday.

signed and dated by him on May 16, 2016.[5]  Accordingly, it appears the Complaint was not filed within the one-year limitations period.

Despite notice and an opportunity to appear, the plaintiff has not come forward with any competent summary judgment evidence in opposition to the defendants' Motion for Summary Judgment or to the documentary evidence produced in support thereof.  Accordingly, there is nothing before the Court which tends to dispute the defendants' assertions.  Based upon the plaintiff's failure in this case to designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial, the Court concludes that the defendants' Motion is well-taken and that, on the record before the Court, the defendants are entitled to summary judgment as a matter of law.

## RECOMMENDATION

It is recommended that the defendants' Motion for Summary Judgment (R. Doc. 188) be granted, and that this matter be dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on July 16, 2019.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] The courts of this Circuit have long concluded that the prison mailbox rule applies to the filing of pleadings submitted to courts by Louisiana *pro se* inmates.  Pursuant to that rule, an inmate's pleadings are considered to be filed on the date that they are presented to prison officials or placed into the prison mailing system for transmission to the Court, not on the date that they are ultimately received or docketed by the Court. *See Cooper v. Brookshire*, 70 F.3d 377, 379-80 (5th Cir. 1995); *Vicks v. Griffin*, 2008 WL 553186, *3 (E.D. La. Feb. 28, 2008).  The inherent basis for the rule is a recognition that, "[u]nskilled in law, unaided by counsel, and unable to leave the prison, [a prisoner's] control over the processing of his [pleadings] necessarily ceases as soon as he hands it over to the only public officials to whom he has access – the prison authorities." *Cooper v. Brookshire, supra*, 70 F.3d at 379, *quoting Houston v. Lack*, 487 U.S. 266, 271-72 (1988).  The *Cooper* court also recognized that application of the rule allows courts to sidestep such potentially difficult issues as the possible motivation of prison officials to delay or obstruct the filing of inmates' complaints, and "pretermits time-consuming examinations of the circumstances behind any delay." *Id.*  Thus, in the absence of evidence to the contrary, courts have generally presumed that the date that an inmate has signed and dated his Complaint is the date that he has given it to prison officials for mailing to the courts. *See Toomer v. Cain*, 2010 WL 4723365, n. 3 (E.D. La. July 30, 2010) (finding that, "[g]enerally, a court will look to the date a prisoner signed his pleading")